United States District Court
Southern District of Texas
**ENTERED**
June 06, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| **VICTOR PRIETO AZAMAR** | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 7:18-CV-00319 |
| | § | |
| **LORIE DAVIS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division** | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1). This case was referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b).

On February 8, 2019, Respondent filed a motion to dismiss, asserting the AEDPA statute of limitations as a defense. (Dkt. No. 3). Petitioner has not filed a response. After careful review of the record and relevant law, the undersigned respectfully recommends that Respondent's motion to dismiss (Dkt. No. 3) be **GRANTED**, that Petitioner's § 2254 motion (Dkt. No. 1) be **DENIED**, and that Petitioner's claims be **DISMISSED** with prejudice. It is further recommended that a Certificate of Appealability be **DENIED** and that the case be closed.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

On May 9, 2013, the Grand Jury for the County of Hidalgo, State of Texas returned an indictment charging Petitioner with aggravated sexual assault of a child in violation of Texas Penal Code § 22.021(a)(2)(B). (Dkt. No. 4-1 at 5, 7). On June 20, 2013, after a three-day trial in the

430th Judicial District of Hidalgo County, Texas, the state district court granted a mistrial.[1] (Dkt. No. 4-1 at 8; Dkt. No. 4-35 at 10). Subsequently, Petitioner's case was retried, and on August 22, 2013, the jury found Petitioner guilty. (Dkt. No. 4-1 at 50-52). That same day, the jury sentenced Petitioner to 40 years' imprisonment in Texas Department of Criminal Justice custody. (*Id.* at 48, 51).

Petitioner filed a timely notice of appeal to the Court of Appeals for the Thirteenth District of Texas on September 6, 2013. (Dkt. No. 4-1 at 55). The appellate court affirmed Petitioner's conviction on May 21, 2015, in an unpublished opinion.[2] (Dkt. No. 4-18; Dkt. No. 4-19).

Petitioner requested leave to file an out-of-time petition for discretionary review ("PDR"), seeking review of the Thirteenth Court of Appeals' decision. (Dkt. No. 4-23). The Court of Criminal Appeals denied Petitioner's request on April 20, 2017.[3] (Dkt. No. 4-20).

Petitioner filed his first state application for writ of habeas corpus on January 18, 2017.[4] (Dkt. No. 4-35 at 120-38). On May 17, 2017, the Texas Court of Criminal Appeals denied, without written order, Petitioner's habeas corpus application.[5] (Dkt. No. 4-24).

On October 16, 2017, Petitioner filed his second state habeas application. (Dkt. No. 4-36 at 47-58; Dkt. No. 4-37 at 1-6). Said application was dismissed as successive on December 5,

---

[1] It appears that the record submitted to this Court does not contain a transcript of the proceedings that resulted in a mistrial.

[2] *Azamar v. State*, No. 13-13-00488-CR, 2015 WL 2452611 (Tex. App.—Corpus Christi, May 21, 2015).

[3] *See* Notice, *Azamar v. State*, No. PD-0355-17 (Tex. Crim. App. Apr. 20, 2017).

[4] The state court received Petitioner's habeas corpus application on January 26, 2017; however, the prison mail box rule applies to a *pro se* prisoner's filings. *See Campbell v. State*, 320 S.W.3d 338, 342 (Tex. Crim. App. 2010). Even if the undersigned were to consider Petitioner's state habeas corpus application to be filed on January 26, 2017, it would not change the timeliness analysis below.

[5] *See* Notice, *Azamar v. State*, No. WR-86,699-01 (Tex. Crim. App. May 17, 2017).

2018.[6]

Finally, Petitioner filed the instant § 2254 petition on March 23, 2018.[7] (Dkt. No. 1 at 10).

## II. SUMMARY OF THE PLEADINGS

Petitioner raises four claims in his § 2254 petition: (1) he asserts "actual innocence," setting out various perceived constitutional violations; (2) he claims that there was insufficient evidence to support his conviction; (3) he states that the trial court erred in not applying the Texas Code of Criminal Procedure, Article 38.072 (dealing with outcry witness testimony), which would have required the child to testify; and (4) he contends that his attorney was ineffective by not investigating and researching the "outcry statute," resulting in his confrontation rights being violated. (Dkt. No. 1 at 6-7).

Petitioner seeks relief in the form of "revers[al] and remand for proceedings consistent with the findings of this Court." (*Id.* at 7). Respondent filed a motion to dismiss, arguing that Petitioner's claims are time barred. (Dkt. No. 3 at 1).

## III. TIMELINESS

### A. One-Year Limitations Period

Pursuant to 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a state prisoner has one year to petition a federal district court for a writ of habeas corpus. The statute states in pertinent part:

---

[6] *See* Notice, *Azamar v. State*, No. WR-86,699-02 (Tex. Crim. App. Dec. 5, 2018). The undersigned observes that Petitioner dated this second habeas application for October 16, 2017 (Dkt. No. 4-37 at 5), and that it was received by the state district court on October 20, 2017 (Dkt. No. 4-36 at 47), but the application was not received by the Texas Court of Criminal Appeals until October 9, 2018.

[7] "'[P]ro se prisoners' filings are governed by the mailbox rule. Thus, they are deemed 'filed as soon as the pleadings have been deposited into the prison mail system.'" *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011). This date is taken from Movant's § 2254 petition, where he states under the penalty of perjury that his motion was placed in the prison mailbox on March 23, 2018. (Dkt. No. 1 at 10).

(d)

    (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

        (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

        (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

**B.    Petitioner's § 2254 Petition is Untimely**

In analyzing timeliness under AEDPA, a judgment becomes final "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003) (quoting *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994)). The Thirteenth Court of Appeals affirmed Petitioner's conviction on May 21, 2015. Pursuant to Texas Rule of Appellate Procedure 68.2(a), Petitioner had 30 days to file a PDR with the Texas Court of Criminal Appeals. He did not. Thus, Petitioner's conviction became final on Monday, June 22,

2015, upon expiration of his time to file a PDR.[8] *See Brown v. Thaler*, 455 F. App'x 401, 405 (5th Cir. 2011).

Petitioner had until June 22, 2016—one year after his judgment became final—to file a § 2254 petition. *See Phillips v. Donnelly*, 216 F.3d 508, 510 (5th Cir. 2000). Since Petitioner filed his two state habeas petitions (January 18, 2017, and October 16, 2017, respectively), after the AEDPA statute of limitations expired, neither of his state habeas petitions tolled the AEDPA clock. *See* 28 U.S.C. § 2244(d)(2); *see also Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) ("Finally, [Petitioner's] state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until *after* the period of limitation had expired."). Likewise, Petitioner's motion for leave to file an out-of-time PDR did nothing to toll the limitations period because it was denied. *Jimenez v. Quarterman*, 555 U.S. 113, 120-21 (2009) (an out-of-time petition for discretionary review restarts the AEDPA limitations clock if it is granted by the Texas Court of Criminal Appeals).

Unfortunately for Petitioner, he waited until March 23, 2018 to file his present § 2254 petition, well after the limitations period expired. Consequently, Petitioner's § 2254 petition is untimely.

### C. Petitioner is Not Entitled to Equitable Tolling

The AEDPA limitations period may be equitably tolled in "rare and exceptional circumstances. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). Because the AEDPA statute of limitations is not a jurisdictional bar, the doctrine of equitable tolling may apply to an untimely petition or claim. *Holland v. Florida*, 560 U.S. 631, 645 (2010). The petitioner must show "(1)

---

[8] Petitioner's 30 days expired on a Saturday. Both federal courts and the Texas Courts of Appeal, in computing time, consider the last day of the period to expire on the following business day. *See* Fed. R. Civ. P. 6(a)(1); Tex. R. App. P. 4.1(a).

that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (internal quotation marks and citation omitted). Only "reasonable diligence," not "maximum feasible diligence," is required. *Id.* at 653. Equitable tolling is considered on a case-by-case basis. *Id.* at 649. The party seeking the benefit of equitable tolling bears the burden of showing that the doctrine applies. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000). A "garden variety claim of excusable neglect does not support equitable tolling." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999).

In the present case, Petitioner asserts nothing to support a finding for equitable tolling. In explaining why his § 2254 petition should not be barred by the statute of limitations, Petitioner states (1) that "the state [of Texas] misapplied the law as dictated by [the] United States Supreme Court," (2) that he is "actually innocent," and (3) that "failure to [entertain] would result in a miscarriage of justice." (Dkt. No. 1 at 9). He offers no explanation that he was diligently pursuing his rights or that there were any extraordinary circumstances that prevented him from timely filing his § 2254 petition. An "[actual innocence] claim does not constitute a 'rare and exceptional' circumstance, given that many prisoners maintain they are innocent." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). The doctrine of equitable tolling does not apply and, as noted below, neither does the miscarriage of justice exception.

**D.   Petitioner's Actual Innocence Claim Does Not Overcome the AEDPA Statute of Limitations**

In addition to the doctrine of equitable tolling, a petitioner may still overcome the expiration of the AEDPA limitations period if his claim qualifies under the fundamental miscarriage of justice exception. *McQuiggens v. Perkins*, 569 U.S. 383, 386 (2013). "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). In other words,

" 'actual innocence' means factual innocence," and the petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). If actual innocence is proved, it serves as a gateway through which the petitioner may bypass a procedural bar, *i.e.*, the expiration of the statute of limitations, to have his constitutional claims heard. *McQuiggens*, 569 U.S. at 386, 392.

To have his or her constitutional claims considered on the merits, a petitioner must make a credible showing of actual innocence. *Floyd v. Vannoy*, 894 F.3d 143, 154 (5th Cir. 2018). "[A]ctual innocence is established through demonstrating that, in the light of newly-discovered evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *Id.* at 155 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "A credible claim must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.' " *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Notably, neither the Supreme Court nor the Fifth Circuit has affirmatively defined what constitutes "new reliable evidence" under the *Schlup* actual-innocence standard. *Hancock v. Davis*, 906 F.3d 387, 389 (5th Cir. 2018). There is a circuit split among the other federal appellate courts, where the disagreement centers on whether the new reliable evidence for the purpose of the *Schlup* actual innocence gateway must be newly discovered, previously unavailable evidence, or, instead, evidence that was available but not presented at trial.[9] *Id.* at 389 n.1. However, the

---

[9] *Compare Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (holding that evidence is new only if it was unavailable at trial and could not have been discovered earlier through due diligence), *with Riva v. Ficco*, 803 F.3d 77, 84 (1st Cir. 2015) (considering newly presented evidence "of opinions from a psychiatric expert that [petitioner] recently retained"), *Rivas v. Fischer*, 687 F.3d 514, 543 (2d Cir. 2012) (finding that "new evidence" is "evidence not heard by the jury"), *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003) ("[A]ll *Schlup* requires is that the new evidence is reliable and that it was not presented at trial."), and *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003) (holding that "habeas petitioners may pass *Schlup*'s test by offering 'newly presented' evidence of actual innocence").

Fifth Circuit has held that evidence is not " 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.' " *Id.* at 390 (citing *Moore v. Quartermann*, 534 F.3d 454, 465 (5th Cir. 2008)).

In determining whether a petitioner has made a credible showing of actual innocence, a court must scrutinize the likely impact of the overall, newly supplemented record on reasonable jurors, *i.e.*, both the evidence presented at trial and the newly discovered evidence. *Floyd*, 894 F.3d at 155. Finally, while a petitioner asserting an actual-innocence claim does not have to prove diligence, "[a] court may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of . . . evidence [of actual innocence]." *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 332).

In his § 2254 petition, Petitioner asserts that he has a *Schlup*-type claim of actual innocence, because there were various constitutional errors at his trial. (Dkt. No. 1 at 6). Petitioner indicates that the state of Texas misconstrued his state habeas claim and seems to assert that his state court applications set out his claim in more detail. (*Id.*). He specifically states that "errors in ineffective assistance of counsel [sic] and *Brady* violations deprived [him] of Due Process." (*Id.*). Finally, he contends that the prosecutor deprived him of his constitutional right to confront his accuser by introducing the nurse's testimony under Rule 803(4) of the Texas Rules of Evidence instead of Section 38.072 of the Texas Code of Criminal Procedure. (*Id.*).

Regarding his actual-innocence claim, in his first state application, Petitioner asserts that the victim's injuries occurred from a bicycle accident with her cousin. (Dkt. No. 4-35 at 125, 140-141). He claims that the victim's mother, Martha Alvarado ("Ms. Alvarado"), is recanting her testimony and that she testified against him in state court because the prosecution threatened to take her child into Child Protective Custody if she failed to do so. (*Id.*). In her sworn affidavit,

dated November 15, 2016, Ms. Alvarado makes no allegations that the state prosecutor threatened her, in any way, to force her to testify.[10] (*Id.* at 147). Ms. Alvarado does state, however, that she believed that the Petitioner was wrongfully convicted and is innocent. (*Id.*). She also states that, at the time of the alleged aggravated sexual assault, her child "had a biking accident wherein she had fallen and scrapped her stomach (belly button) down to her bottom." (*Id.*).

In his second state court application, Petitioner seems to assert that the claims therein are not new, but are meant to "amplify the grounds" in his first state habeas application. (Dkt. No. 4-36 at 50). Petitioner asserts that the "[p]rosecution suppressed exculpatory evidence, namely the sheriff's report that stated the child had been warned not to touch herself in her private part and objected at [his] trial when [his] witnesses introduced this testimony to the jury."[11] (*Id.* at 58). In an attached memorandum, Petitioner clarifies that at trial "[his] witness gave an explanation for the victim's injury (witness told the jury that the alleged victim had been touching on her private part and probably did this to herself)." (Dkt. No. 4-37 at 13). Petitioner further sets out that "[t]he detailed sheriff's report was suppressed and Prosecution objected to my witness's testimony as

---

[10] The undersigned further notes that, during the trial, the following exchange occurred between Petitioner's attorney and Ms. Alvarado:

Petitioner's attorney: "Isn't it true that members of the State came to your house, and forced you to come here, even though you didn't want to be here, isn't that correct?"

Ms. Alvarado answered: "Ah, I spoke with Alyssa, and I told her that I didn't want to come."

Petitioner's attorney: "In fact you said, 'I don't want to pursue any charges against Victor. I don't want to come to court.' "

Ms. Alvarado answered: "I didn't say that. I didn't say that I didn't want to come to court." (Dkt. No. 4-9 at 51-52).

[11] To provide support, Petitioner cites to Reporter's Record, Vol. 2 of 2, pg. 13, lines 1 and 2. Neither the record citation provided by the Petitioner or the described witness testimony correspond with the transcript of the jury trial provided to this Court. The undersigned notes that the transcript of Petitioner's first trial, which ended in a mistrial, was not provided to this Court. The record suggests that the mistrial was transcribed. (Dkt. No. 4-6 at 3-4). The undersigned concludes that Petitioner is describing witness testimony that was likely given at his first trial or at some other proceeding outside of the trial that actually resulted in his conviction.

hearsay," which he claims to be a *Brady* violation.[12] (*Id.*). He further claims that his attorney did a poor job to "show cause and introduce this exculpatory evidence to the jury." (*Id.*). Petitioner asserts that this evidence goes to show that he is not guilty and to show that the child's outcry was unreliable. (*Id.* at 1, 13).

In addition, in his second state application and accompanying memorandum, while discussing his actual-innocence claim, Petitioner sets out several perceived trial-court errors and claims of ineffective assistance of counsel. Regarding trial-court errors, Petitioner asserts that the state trial court erred: (1) by admitting the sexual assault nurse examiner's ("S.A.N.E") testimony and medical records; (2) by not conducting the mandatory hearing to determine the reliability of the outcry; (3) by not determining that the alleged victim's recorded interview was admissible; (4) by not assuring that victim's interrogation was properly conducted and not calculated to lead the child to make a particular statement; (6) by denying a mistrial; and (7) by not allowing the defense to question a Juror Hernandez[13] for cause to strike because of the juror's initial statement was that he could not be impartial. (Dkt. No. 4-36 at 47-58; Dkt. No. 4-37 at 1-6, 10-14).[14] Petitioner contends that his attorney was ineffective by: (1) failing to object to the trial court's ruling regarding Juror Hernandez; (2) mistakenly striking another juror instead of striking Juror Hernandez; (3) not requesting a hearing to determine whether the alleged victim's outcry was reliable; and (4) failing to object to the S.A.N.E.'s testimony. (Dkt. No. 4-36 at 52-53; Dkt. No. 4-37 at 1, 10).

---

[12] Petitioner's *Brady* claim is unclear. Petitioner may be asserting that a *Brady* violation occurred because the sheriff's report was "suppressed" at trial, in the sense that the report was not admitted into evidence and testimony as to its contents was disallowed, or he may be asserting that it was "suppressed" in the true sense of *Brady*, that the report was never turned over or made known to the defense.

[13] The record reflects that Juror Hernandez was Juror No. 23, Juan Carlos Hernandez. (Dkt. No. 4-8 at 197).

[14] Citations to the record use the CM/ECF program page numbers, rather than the printed page numbers.

First, none of Petitioner's claims of trial-court error and ineffective assistance of counsel are considered newly discovered evidence to support an actual-innocence claim. This is true because these claims are legal arguments that address the "legal insufficiency" of his underlying conviction and not factual innocence—or actual innocence. As stated above, a credible showing of actual innocence only gets Petitioner past the procedural bar—the statute of limitations—to have the Court consider the merits his *constitutional* claims.

Second, Petitioner fails to demonstrate that the evidence that the child victim had been previous admonished not to touch her private area is newly discovered evidence. The relevant part of the sheriff's report states as follows:

> Martha [Alvarado] also noticed [her child] touch herself for the past two months. She has told [her child] to stop touching herself, but [her child] has never told her anything. She stated that Elizabeth [Ysquierdo, her sister] says that she has also noticed [the child] touch herself on her vaginal area.

(Dkt. No. 4-37 at 17, "Hidalgo County Sheriff's Department Criminal Investigations Division Crimes Against Persons Detailed Report").

While it is unclear from Petitioner's filings whether he and his attorney had the actual investigative report at trial, it obvious that they had the information, making the investigative report immaterial. Petitioner asserts that his witness testified, in front of the jury, that the child had been touching her private part and probably "did this to herself," but the prosecution objected on hearsay grounds.[15] Petitioner even criticizes his attorney, claiming that his attorney did a poor job in not getting this evidence to the jury. Here, Petitioner demonstrates that he had personal

---

[15] Even if Petitioner is describing testimony that was given at the first trial (which ended in a mistrial), it would mean that Petitioner was aware of this information by the time of his second trial (which resulted in his conviction). Regardless of which proceeding Petitioner believes this testimony was given at, the information would not be "new" evidence, because it was within the realm of Petitioner's knowledge at the time of either trial.

knowledge of the evidence at trial. And, if there were some details that he was not aware of, these details would have been within the reach of the petitioner's personal knowledge or reasonable investigation. *See Hancock*, 906 F.3d at 390 (evidence is not new under the *Schlup* actual-innocence standard if it was always within the reach of the petitioner's personal knowledge or reasonable investigation). Consequently, the facts about the child being admonished not to touch herself would not be newly discovered evidence under *Schlup*.

Finally, Ms. Alvarado's affidavit would also not be newly discovered evidence, and if it were, her affidavit does not arise to a credible showing of actual innocence under *Schlup*. On November 15, 2016, Ms. Alvarado signed a sworn affidavit, stating (1) that she believed that the Petitioner was wrongfully convicted and is innocent and (2) that, at the time of the alleged aggravated sexual assault, her child "had a biking accident wherein she had fallen and scrapped her stomach (belly button) down to her bottom." (Dkt. No. 4-35 at 147). Notably, Ms. Alvarado's affidavit is vague as to the specific day and to the details of her two-year old's biking accident. It is not clear, to what extent, Ms. Alvarado had personal knowledge of the incident.

Further, Ms. Alvarado's affidavit would not likely be considered newly discovered evidence. Petitioner asserts, in his state habeas application, that the child's injuries resulted from an accident involving the child's cousin giving the child a ride on a bicycle. (Dkt. No. 4-35 at 125, 140). It seems intuitive that, when a verbally-challenged child is found with injuries to her private parts and there is an allegation of sexual assault, the first inquiry of an attorney, an accused, or family members is whether there were other incidents that could have caused the child's injuries. It stands to reason that, during the relevant time frame, the defense could have asked any family member who had contact with the child about incidents that resulted in physical injuries, *e.g.*, a bicycle accident with the cousin. For these reasons, the information regarding the child's bicycle

accident would have always been within the reach of Petitioner's personal knowledge or reasonable investigation.

Assuming for argument's sake that the bicycle accident is newly discovered evidence, in viewing the overall record, this evidence does not make it more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. The affidavit simply does little, if anything, to help Petitioner meet his burden for the following reasons. First, the child's mother, Ms. Alvarado, already testified at trial that she did not believe that the Petitioner committed the sexual assault. (Dkt. No. 4-9 at 48). Second, while several of the child's relatives testified they were around the child during the relative time frame of the alleged sexual assault, no one gives testimony about a bicycle accident or seeing any kind of scrapes on the child's body—including the child's grandmother, who bathed the child in the evening of the alleged sexual assault. (*Id.* at 197, 214, 230-33). Third, Michelle Chavez, a nurse practitioner, and Elvia Munguia, a Sexual Assault Nurse Examiner, both testified at trial that they performed separate external or outward examinations of the child's body and observed no trauma, bruises, cuts or injuries on the outside on the body, which contradicts there being scrapes on the child's body from a bicycle accident. (*Id.* at 86-87, 164-65). Fourth, Ms. Alvarado's affidavit does not have any details regarding the bicycle accident that would explain why both Ms. Chavez and Ms. Munguia found internal injuries or signs that were consistent with penetration and sexual trauma. (*Id.* at 89-91, 170-71). Further, Ms. Munguia testified that the victim had a "fissure or split" on her hymen and that a child who had not been sexually abused would not have had that type of injury to her hymen. (*Id.* at 169-71). Fifth, while there may have been a bicycle accident, when the child's mother asked her why her "cookie [vagina]" hurt, the child responded that it hurt because Petitioner "poked her with a stick." (Dkt. No. 4-9 at 27-28). Moreover, in response to a similar question,

the child gave more details to her nurse practitioner, Ms. Chavez. When Ms. Chavez asked if the stick was in his hand, the child said, "no," and pointed between her legs. (*Id.* at 74-77). The child indicated to Ms. Chavez that Petitioner took off her dress, lowered her clothes, removed his pants, and poked her with his stick. (*Id.* at 79). Finally, Ms. Chavez stated that she questioned the child further, but could not get answers that would suggest that something other than a sexual assault occurred. (*Id.* at 92). For these reasons, Petitioner fails to meet the *McQuiggins* and *Schlup* gateway standard and does not qualify for the miscarriage of justice exception.

The undersigned recommends that this § 2254 petition be dismissed as untimely because Petitioner has not shown that he meets any exception to the time bar.

## IV. CONCLUSION

### *Recommended Disposition*

After careful review of the record and relevant law, the undersigned respectfully recommends that Respondent's motion to dismiss (Dkt. No. 3) be **GRANTED**, that Petitioner's § 2254 petition (Dkt. No. 1) be **DENIED**, that Petitioner's claims be **DISMISSED** with prejudice, and that the case be closed.

### *Certificate of Appealability*

It is recommended that the District Court **DENY** a Certificate of Appealability.

Pursuant to 28 U.S.C. § 2253(c)(1)(A), a petitioner may not appeal the final order of a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). The Rules Governing Section 2254 Proceedings instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, The Rules Governing Section 2254 Proceedings. Because it is recommended

that Petitioner's § 2254 motion be dismissed, the undersigned must address whether he is entitled to a certificate of appealability (COA).

A petitioner is entitled to a COA when it can be shown that a reasonable jurist would find it debatable "whether the petition states a valid claim of the denial of a constitutional right" and "whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c). Because the undersigned finds that Petitioner fails to meet this threshold, it is recommended that the District Court deny a COA.

### *Notice to the Parties*

Within fourteen days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Federal Rules of Civil Procedure, Rule 72(b). Failure to file written objections within fourteen days after service shall bar an aggrieved party from de novo review by the District Court on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of clear error or manifest injustice.

The clerk of this court shall forward a copy of this document to the parties by any receipted means.

SIGNED this 5th day of June, 2019, at McAllen, Texas.

_____
J. SCOTT HACKER
United States Magistrate Judge